UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
ELIZABETH RIVERA,

                            Plaintiff,                      **MEMORANDUM & ORDER**
            -against-                                  16-CV-05021 (PKC)

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

                            Defendant.
------------------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Plaintiff Elizabeth Rivera ("Plaintiff") brings this action under 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration's ("SSA") denial of her claim for Disability Insurance Benefits ("DIB") and of Supplemental Security Income ("SSI"). The parties have cross-moved for judgment on the pleadings. (Dkts. 12, 13.) Plaintiff seeks reversal of the Commissioner's decision and an immediate award of benefits, or alternatively, remand for further administrative proceedings. The Commissioner seeks affirmance of the denial of Plaintiff's claims. For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's motion. The case is remanded for further proceedings consistent with this Order.

## BACKGROUND

### I. PROCEDURAL HISTORY

On May 8, 2013, Plaintiff filed an application for DIB and SSI, claiming that she has been disabled since July 11, 2009, due to a back disorder and obesity. (Tr. 159-68, 179-83.)[2] Plaintiff

---

[1] Nancy A. Berryhill became Acting Commissioner of Social Security on January 23, 2017. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this suit.

[2] All references to "Tr." refer to the consecutively paginated Administrative Transcript.

appeared for a hearing before an administrative law judge ("ALJ") on March 19, 2015. (Tr. 140.) By decision dated April 6, 2015, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act at any time between July 11, 2009 and April 6, 2015. (Tr. 31.) After the SSA denied Plaintiff's application for review, Plaintiff filed an administrative appeal with the Appeals Council. (Tr. 3.) As part of Plaintiff's appeal, she submitted additional MRI records that indicate spine problems. (Tr. 23.) Plaintiff also submitted a Physical Residual Functional Capacity ("RFC") Questionnaire completed by Dr. Isaac Kreizman. (Tr. 11-14.) The Appeals Council denied review on July 13, 2016, because it did not find a reason under its rules to review the ALJ's decision. (Tr. 4-5.) Based upon this denial, Plaintiff filed this action on September 9, 2016 seeking reversal or remand of the ALJ's April 6, 2015 decision.

## II. STANDARD OF REVIEW

Unsuccessful claimants for disability benefits under the Social Security Act (the "Act") may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. § 405(g). In reviewing a final decision of the Commissioner, the Court's role is "limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (alterations and internal quotation marks omitted)). In determining whether the Commissioner's findings were based upon substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (quotation omitted). However, "it

2

is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013).

## III. ELIGIBILITY STANDARD FOR SOCIAL SECURITY DISABILITY BENEFITS

To receive DIB and SSI, claimants must be disabled within the meaning of the Act. Claimants establish disability status by demonstrating an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). The claimant bears the initial burden of proof on disability status and must demonstrate disability status by presenting medical signs and findings, established by "medically acceptable clinical or laboratory diagnostic techniques," as well as any other evidence the Commissioner may require. 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(D). However, the ALJ has an affirmative obligation to develop the administrative record. *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009). This means that the ALJ must seek additional evidence or clarification when the claimant's medical reports contain conflicts or ambiguities, if the reports do not contain all necessary information, or if the reports lack medically acceptable clinic and laboratory diagnostic techniques. *Demera v. Astrue*, No. 12 Civ. 432, 2013 WL 391006, at *3 (E.D.N.Y. Jan. 24, 2013); *Mantovani v. Astrue*, No. 09 Civ. 3957, 2011 WL 1304148, at *3 (E.D.N.Y. March 31, 2011).

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps in the inquiry; the Commissioner bears the burden

in the final step. *Talavera*, 697 F.3d at 151. First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. If the claimant is not engaged in "substantial gainful activity," the ALJ proceeds to the second step to determine whether the claimant suffers from a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is determined to be severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the impairment is not severe, then the claimant is not disabled within the meaning of the Act. However, if the impairment is severe, the ALJ proceeds to the third step, which considers whether the impairment meets or equals one of the impairments listed in the Act's regulations (the "Listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

If the ALJ determines at step three that the claimant has one of the listed impairments, then the ALJ will find that the claimant is disabled under the Act. On the other hand, if the claimant does not have a listed impairment, the ALJ must determine the claimant's "residual functional capacity" ("RFC") before continuing with steps four and five. The claimant's RFC is an assessment which considers the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in the work setting." 20 C.F.R. § 404.1545(a)(1). The ALJ will then use the RFC determination in step four to determine if the claimant can perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the answer is yes, the claimant is not disabled. Otherwise the ALJ will proceed to step five where the Commissioner then must determine whether the claimant, given the claimant's RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the

national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the answer is yes, the claimant is not disabled; otherwise the claimant is disabled and is entitled to benefits. *Id.*

## IV.   RELEVANT FACTS AND MEDICAL RECORDS

Plaintiff's claim of disability stems from a motor vehicle accident ("MVA") that occurred on July 9, 2009. (Tr. 49.) Plaintiff's truck was rear-ended and she hit her head on the dashboard and back window. (Tr. 286.) After the accident, Magnetic Resonance Imaging ("MRI") performed on September 4, 2009, of Plaintiff's lumbar spine revealed thoracic strain/sprain with radiculopathy[3], lumbosacral strain/sprain with right radiculopathy, herniated nucleus pulposes at L2-3 and L5-S1 with disc bulges at L3-4 and L4-5. (Tr. 289.) Plaintiff's treating doctor stated that her pain would increase over time due to a pinched nerve in her back, and even with surgery, Plaintiff may end up in a wheelchair. (Tr. 54.) Plaintiff visited a neurologist, Dr. Kimberly A. Tobon, on November 9, 2009. Dr. Tobon reported that Plaintiff complained of "constant low back pain, radiating into the right leg, with numbness and tingling in the right leg and thigh, 7-9/10 level." (Tr. 286.) Plaintiff also complained of middle back pain that radiated between the shoulder blades, affecting the left arm more than the right. (*Id.*) Plaintiff reported that therapy with Dr. Torres, a chiropractor, helps "a little." (*Id.*) Dr. Tobon recommended further treatment and opined that the problems are likely related to the MVA. (Tr. 289.) Dr. Tobon further noted that range of motion on flexion was limited to 30 degrees, and Plaintiff experienced spasms in the lumbosacral

---

[3] Radiculopathy is a disorder of the spinal nerve roots. *See radiculopathy*, STEDMAN'S MEDICAL DICTIONARY 748650.

paraspinal muscles. (Tr. 288.) Dr. Tobon prescribed Neurontin 300 mg, Vicodin ES, NCV/EMG[4], and continuing therapy. Straight leg raising was negative. (*Id.*)

Plaintiff visited University Community Hospital Emergency Room on January 21, 2011, and was diagnosed with acute sciatica.[5] (Tr. 413.) Plaintiff complained of constant, sharp pain radiating down to the right upper thigh and in the lower back, at a score of 9/10. Plaintiff stated that the pain was exacerbated by movement. (Tr. 410-11.)

Plaintiff's X-ray, of the lumbar spine, taken on June 28, 2013, revealed mild tilting towards the right with straightening of the normal lordosis[6], degenerative disc disease L5-S1, and multilevel facet arthropathy[7] with significant canal stenosis[8] at L5-S1. (Tr. 427.) A x-ray of the thoracic spine revealed straightening of the normal kyphosis[9] with tilting lower thoracic spine

---

[4] NCV refers to nerve conduction velocity test, which is often used to distinguish between a nerve disorder and a muscle disorder. EMG refers to electromyography, a procedure used to assess muscles and nerve cells that control them. *See NCV, EMG*, MAYO CLINIC, https://www.mayoclinic.org/tests-procedures/electroconvulsive-therapy/basics/definition/prc-20014183?p=1 (last visited Jan. 12, 2018).

[5] Sciatica refers to radiating pain along the path of the sciatic nerve in the lower back through the hips. *See Sciatica*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/sciatica/basics/definition/CON-20026478?p=1 (last visited Jan. 12, 2018).

[6] Lordosis is an "anteriorly convex curvature of the vertebral column; the normal lordosis of the cervical and lumbar regions are secondary curvatures of the vertebral column, acquired postnatally." *See lordosis*, STEDMAN'S MEDICAL DICTIONARY 513320.

[7] Facet arthropathy refers "to a degenerative disease that affects the joints of the spine." *See facet arthropathy*, LASER SPINE INSTITUTE, https://www.laserspineinstitute.com/back_problems/facet_disease/articles/facet_joint_arthropathy/ (last visited Jan. 12, 2018).

[8] Canal stenosis refers to the narrowing of the vertebral canal located in the center of the back. *See canal stenosis*, LASER SPINE INSTITUTE, https://www.laserspineinstitute.com/back_problems/canal_stenosis/def/ (last visited Jan. 12, 2018).

[9] Normal kyphosis of the thoracic and sacral regions are retained portions of the primary curvature of the vertebral column. *See kyphosis*, STEDMAN'S MEDICAL DICTIONARY 473880.

towards the right, and noted that a previous MRI of the thoracic spine indicated disc bulging and spondylitic[10] changes. (Tr. 428.) An x-ray of the cervical spine revealed straightening of the normal lordosis, and spondylitic changes with no acute bony abnormality. (Tr. 429.) The following day, June 29, 2013, Plaintiff was seen by Dr. Usman Ahmad, D.O., for a consultative examination. Plaintiff complained of pain, numbness, swelling in the right leg, and no feeling in the toes on the right foot. (Tr. 430.) Plaintiff reported the pain to be chronic and radiating to her right side and hip. (*Id.*) Dr. Ahmad noted that Plaintiff's gait was within normal limits and that she was able to tandem walk, but that she had difficulty squatting. (Tr. 433.) Dr. Ahmad opined that Plaintiff did not have any acute neurologic deficits or injury to the back, but noted that Plaintiff had "some mild paravertebral spinal tenderness and spasm in the right lumbar area." (*Id.*)

On November 4, 2013, Dr. Isaac Kreizman of Pain & Rehabilitation Services examined Plaintiff for stabbing low back pain, lumbar radiculopathy, and hip pain. (Tr. 497-98.) An MRI performed that day demonstrated circumferential disc bulge with mild to moderate broad-based midline disc herniation at L5-S1. (Tr. 448.) Plaintiff was prescribed Oxycodone, Flexcril, Gabapentin, and Cymbalta. (Tr. 495.) Plaintiff followed up with Dr. Kreizman for treatment in February, March, April, May, June, August, September, October, and December of 2014, and Dr. Kreizman reported that, as of December 1, 2014, Plaintiff experienced severe low back pain, hip pain, tingling and numbness in the legs, at a pain level of 8/10. (Tr. 451-98.) Throughout the months of Plaintiff's follow up visits, Dr. Kreizman treated Plaintiff with Kenalog steroid

---

[10] Cervical spondylosis refers to "age-related wear and tear affecting the spinal disks in [the] neck. As the disks dehydrate and shrink, signs of osteoarthritis develop, including bony projects along the edges of bones." *See cervical spondylosis*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/cervical-spondylosis/symptoms-causes/syc-20370787 (last visited Jan. 12, 2018).

7

injections for pain management, lumbar trigger injection, and three epidural injections. (Tr. 467, 476, 480, 489, 494, 499, 521.)

On August 20, 2014, Dr. Paul McClung performed an MRI of Plaintiff's lumbosacral spine and reported that Plaintiff had a left herniated disk at L5-S1, a midline annulus[11] tear at L4-L5, facet hypertrophy at L3-L4, and a "left foraminal herniated disc with compression of the left L5 nerve root." (Tr. 449.) On December 18, 2014, Dr. Paul McClung diagnosed Plaintiff with low back pain, back spasms, lumbar herniated disc L5-S1, and lumbar disc annular tear L4-L5. (Tr. 519.) Dr. McClung reported that Plaintiff had "difficulty sitting, standing, or walking for more than 15-20 minutes and must rest for 10-20 minutes because of the back pains[,]" and that Plaintiff wears a back brace for lumbar support. (*Id.*)

On October 6, 2014, Dr. Leon Reyfman, pain specialist, examined Plaintiff. (Tr. 444.) Plaintiff complained of "lower back pain radiating to the both leg with numbness/tingling in toes." (*Id.*) Dr. Reyfman reported diffuse tenderness in the lower back, sacroiliac region, and spinous processes L3-S1. (Tr. 445.) Plaintiff had limited range of motion of lumbar spine and pelvis, with flexion pain. (*Id.*) Dr. Reyfman noted moderate muscle spasm along lumbar paravertebral, multifidus[12], sacrospinalis, gluteus and piriformis bilaterally. (*Id.*) Dr. Reyfman diagnosed Plaintiff with lumbosacral neuritis radiculopathy and lumbar disc displacement, and instructed Plaintiff to continue with current medication (Oxycodone, Gabapentin, Cymbalta), physical therapy, and to "avoid repetitive forceful, strenuous, twisting, jerky activities which may aggravate the underlying

---

[11] Annulus refers to the tough exterior that surrounds the vertebrae in the spine. *See annulus*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/herniated-disk/multimedia/herniated-disk/img-20006459 (last visited Jan. 12, 2018).

[12] Multifidus is an intermediate layer of deepest muscles of the back. *See multifidus*, STEDMAN'S MEDICAL DICTIONARY 569220.

condition. In addition, [Plaintiff] was also advised to avoid activities like pulling, pushing, bending, lifting, or carrying anything heavy." (Tr. 446.)

By letter, dated February 12, 2015, Dr. Kreizman opined as follows:

Please be advised that the above named patient is being treated in my office for severe lower back pain, lumbar radiculopathy, bilateral knee pain, and gait disorder. The patient has arthritis in both her knees. [Plaintiff's] pain rates 9/10 on a pain scale. Due to her pain, she has decreased muscle strength, range of motion, difficulty functioning and has limitations in her ADL's. [Plaintiff] has difficulties walking and standing for long periods of time. The patient is currently undergoing treatment; she is receiving pain management injections and currently attending physical therapy twice a week to help relieve her pain. At this present time the patient is very limited to any type of physical activities or work she is able to perform.

If you have any questions, please feel free to contact me[.]

(Tr. 521.)

On June 20, 2016, Dr. Kreizman completed an RFC form in which he opined that Plaintiff could sit for less than two hours, stand and/or walk less than two hours, occasionally lift and/or carry less than 10 pounds, and rarely lift and/or carry up to 20 pounds. Dr. Kreizman also stated that Plaintiff is incapable of even "low stress" jobs. (Tr. 11-14.)

## V.   THE ALJ'S DECISION

The ALJ's decision followed the five-step evaluation process established by the SSA to determine whether an individual is disabled. (Tr. 31-37.) At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity between her alleged onset date (July 11, 2009) through the date of ALJ's decision (April 6, 2015). (Tr. 33.) At step two, the ALJ determined that Plaintiff suffered from discogenic and degenerative back disorder, obesity, and degenerative joint disease of the knees, which qualified as severe impairments. (*Id.*) However, the ALJ found that the record did not support Plaintiff's reported depression and anxiety, and that Plaintiff did not have a "medically determinable mental impairment." (Tr. 34.)

At step three, the ALJ determined that Plaintiff's impairments, either singly or in combination, did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) In reaching this determination, the ALJ focused on Listings 1.02 ("Major dysfunction of joint(s)") and 1.04 ("Disorders of the spine"), and found that Plaintiff's impairments did not meet the severity criteria in either listing because there is no "evidence of the inability to ambulate effectively or [of] extensive motor, sensory or muscle loss." (*Id.*)

The ALJ therefore proceeded to determine Plaintiff's RFC, finding that Plaintiff was able to perform the full range of sedentary work. (*Id.*) In reaching this RFC determination, the ALJ gave deference to the consultative opinion of Dr. Ahmad from June 2013, which the ALJ found, "revealed that muscle strength and sensation were normal in the upper and lower extremities [and that] [t]andem walking was normal, although she was unable to walk on her heels and toes." (Tr. 35.) The ALJ also noted that a recent MRI scan of Plaintiff's knees showed "mild three compartment osteoarthritis with [a] meniscal tear of the left knee and moderate three compartment degenerative joint disease with degenerative tears of both medial and lateral menisci of the right knee." (Tr. 36.) The ALJ acknowledged that his determination of Plaintiff's RFC did not accord with Plaintiff's own description of the intensity, persistence, and limiting effects of her symptoms, which the ALJ found was "not entirely credible." (*Id.*)

At step four, the ALJ determined that although Plaintiff had worked as a cashier, clothing salesperson, housekeeper, and leasing agent, Plaintiff had no past relevant work, because "it is unclear which job was performed at substantial gainful activity levels." (Tr. 34.)

At step five, after determining Plaintiff's RFC, based on age, education, and work experience, the ALJ consulted vocational guidelines and determined that Plaintiff could make a successful adjustment to work existing in significant numbers in the national economy. (Tr. 37.)

On that basis, the ALJ found that Plaintiff was not disabled from the alleged onset date (July 11, 2009) through the date of the ALJ's decision (April 6, 2015). (*Id.*)

## DISCUSSION

The ALJ found that Plaintiff was able to perform the full range of sedentary work. Under 20 C.F.R. § 404.1567(a) ("Physical exertion requirements"), sedentary work "involves lifting no more than 10 pounds at a time, [and] is defined as one which involves sitting[,] [but where] a certain amount of walking and standing is often necessary in carrying out job duties." *See also Schaal v. Apfel*, 134 F.3d 496, 501 n.6 (2d Cir. 1998). For low-skill workers[13], "sedentary work requires a worker to be in a certain place or posture for at least a certain length of time to accomplish a certain task and that unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will." *Gray v. Chater*, 903 F. Supp. 293, 299 (N.D.N.Y. 1995) (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F. 2d 638, 643 (2d Cir. 1983)). The Commissioner bears the burden to prove by "positive evidence that plaintiff can perform sedentary work, and the burden is not carried merely by pointing to evidence that is consistent with his otherwise unsupported assertion." *Rosa v. Callahan*, 168 F. 3d 72, 81 (2d Cir. 1999) (quotation omitted).

Plaintiff challenges the ALJ's decision on three grounds. First, Plaintiff argues the ALJ erred in determining, at step three of his analysis, that Plaintiff's impairment did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Pl.'s

---

[13] The ALJ determined that Plaintiff has limited education, is able to communicate in English, and has no work skills that are transferable to the skilled or semiskilled activities of other work. (Tr. 36.)

Br., Dkt. 10, at ECF[14] 19-20.) Second, Plaintiff argues that the ALJ erred by failing to afford proper weight to Plaintiff's treating physicians, Drs. Kreizman and McClung. (Pl.'s Br., Dkt. 10, at ECF 18-19.) Third, Plaintiff argues that the ALJ erred in his evaluation of Plaintiff's statements concerning the intensity, persistence, and functionally limiting effects of her symptoms. (Pl.'s Br., Dkt. 10, at ECF 20.) For the reasons stated below, the Court finds that the ALJ committed reversible error in evaluating Plaintiff's statements concerning the intensity, persistence, and functionally limiting effects of her symptoms.

At the administrative hearing, Plaintiff testified, "I can't stand long. I start getting really, really bad pains in my legs and on my back and I can't sit very long either. . . . I'm always in the apartment. I can't come out because I'm afraid I'm going to fall and get hurt because my knees lock." (Tr. 51-52.) Plaintiff's former roommate, Rosa Roman, completed a third party pain questionnaire and stated "[Plaintiff] can't go up or down stairs cause she start with pain [sic] . . . . [S]he can't sleep good because pain. She always takes very hot shower she say that it relives [sic] her pain a little. . . . She is always in bad mood she complain a lot of pain every day she don't sleep she needs medical help." (Tr. 227-29.) Additionally, Dr. Kreizman opined that Plaintiff could sit for less than two hours, stand and/or walk less than two hours, and occasionally lift and/or carry less than 10 pounds. (Tr. 11-14.) Dr. Reyfman also advised Plaintiff to avoid pulling, pushing, bending, lifting, or carrying anything heavy. (Tr. 446.)

The ALJ found that Plaintiff's statements concerning her pain and the limitations caused by her pain were "not entirely credible." (Tr. 36.) The ALJ discounted Plaintiff's statements on the purported grounds that (i) Plaintiff received only "conservative treatment"; (ii) clinical findings

---

[14] "ECF" refers to the pagination generated by the CM/ECF system, and not the document's internal pagination.

by pain specialist Dr. Reyfman in October 2014 were "limited"; and (iii) Ahmad's consultative examination in June 2013 found "little wrong with the claimant." (Tr. 36.) The ALJ also found that "there is nothing in the record to support the claimant's allegations that her ability to sit is restricted." (*Id.*)

The Court finds that the ALJ erred in discounting Plaintiff's pain statements. First, the ALJ's determination that Plaintiff's treatment regime for her pain was "conservative" is directly contradicted by Plaintiff's medical records, which show that Plaintiff has consistently been taking powerful pain killers and receiving epidural steroid injections for her pain since November 2009. The ALJ's determination is also contrary to Plaintiff's statements, in the hearing, that she uses a TENS unit.[15] The ALJ failed to identify any additional treatment, beyond these pain treatments, that someone with Plaintiff's alleged symptoms would have undertaken. Thus, the ALJ's rationale for judging Plaintiff's treatment regime as "conservative" relative to her claimed pain symptoms is not discernable from the Decision and, therefore, cannot be said to be supported by substantial evidence. *See Medick v. Colvin*, No. 16 Civ. 341, 2017 WL 886944, at *12 (N.D.N.Y. Mar. 6, 2017) (holding that ALJ's finding of "conservative" treatment was not supported by the record, where "the ALJ does not explain why plaintiff's course of medication . . . is considered conservative treatment, [and] there is no evidence that more aggressive treatment options were available or determined to be medically appropriate for plaintiff"); *see also Hamm v. Colvin*, No. 16 Civ. 936, 2017 WL 1322203, at *25 (S.D.N.Y. Mar. 29, 2017) (holding that ALJ erred in deeming plaintiff's treatment "conservative" where "the ALJ has pointed to nothing in the record

---

[15] A TENS unit is used "to treat some types of chronic pain . . . [by sending] pulses of battery-generated electrical current to key points on [the] nerve pathway via electrodes taped to your skin." *See TENS unit*, MAYO CLINIC, https://www.mayoclinic.org/tens/img-20006686 (last visited Jan. 12, 2018).

to suggest that Plaintiff was an eligible candidate for more aggressive medical treatment, such as surgery").

Taking away the ALJ's conclusory statement that Plaintiff's treatment was "conservative," the ALJ's decision to discount Plaintiff's pain statements rested solely on the clinical findings of two consultative doctors—Dr. Reyfman in October 2014 and Dr. Ahmad in June 2013—which the ALJ characterized as "limited" and "[showing] little wrong with the claimant," respectively. (Tr. 36.) Under the regulations, however, such clinical findings cannot be the sole basis on which to discount a Plaintiff's statements concerning the persistence, intensity, and limiting effects of her pain symptoms. *See Caffrey v. Astrue*, No. 06 Civ. 3982, 2009 WL 1953008 at *5 (S.D.N.Y. July 6, 2009) ("An adjudicator is expressly prohibited at this step from rejecting a claimant's allegations solely because objective medical evidence does not substantiate them.") (citing 20 C.F.R. § 404.1529(c)(2)). Indeed, once an ALJ finds that an applicant has proven a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged—as the ALJ did in his Decision (Tr. 36)—the ALJ cannot then reject the applicant's claim of debilitating pain based solely on the objective medical findings. *See Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (citing SSR 96-7P ("[A]n individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone.")); *see also Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) ("A claimant's subjective evidence of pain . . . is entitled to great weight[.]"). Accordingly, the ALJ erred in rejecting Plaintiff's pain statements based on the medical evidence before him.

Moreover, the ALJ committed legal error by discounting Plaintiff's pain statements based on his finding that "there is nothing in the record to support the claimant's allegations that her ability to sit is restricted." (Tr. 36.) As a factual matter, this conclusion is not supported by

14

substantial evidence. Plaintiff adduced evidence of the limiting effects of her pain in the form of her own testimony and written statements from two physicians. (Tr. 51, 519, 521.) As a legal matter, the ALJ's finding that Plaintiff failed to "support" her claim of debilitating pain constitutes a misapplication of the governing legal standard. Under 20 C.F.R. § 404.1529, an ALJ must consider the Plaintiff's statements of the debilitating effects of her pain to the extent those statements are "reasonably . . . consistent with" all of the evidence. Beyond showing that a medical impairment could reasonably be expected to cause the symptoms of which the applicant complains—which Plaintiff showed in this case, according to the ALJ (Tr. 36)—an applicant has no burden to further "substantiate" or "support" her subjective statements of pain. *See Meadors v. Astrue*, 370 F. App'x 179, 184 (2d Cir. 2010) ("[The Claimant's] allegations [of the limiting effects of her symptoms] need not be substantiated by medical evidence, but simply consistent with it. The entire purpose of § 404.1529 is to provide a means for claimants to offer proof that is not wholly demonstrable by medical evidence." (quoting *Hogan v. Astrue*, 491 F. Supp. 2d 347, 353 (W.D.N.Y. 2007) (brackets omitted))). Thus, the ALJ committed legal error by discounting Plaintiff's statements because she supposedly failed to support them with other forms of evidence.

Perhaps aware of the ALJ's errors in evaluating Plaintiff's credibility, the Commissioner offers alternative bases on which the ALJ arguably might have rejected Plaintiff's pain statements. (*See* Comm'r Br. 23-24.) Principally, the Commissioner argues that Plaintiff's work history, treatment history, and daily activities are not consistent with the levels of pain she now alleges. (*See* Comm'r Br. 24.)

The Court declines to affirm the ALJ's decision on those bases for three reasons. First, although a district court may affirm an ALJ's finding on a particular issue where the rationale for the finding "can be discerned" from the ALJ's decision and the administrative record, *see Snyder*

15

*v. Colvin*, No. 13 Civ. 585, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014); *Panaro v. Colvin*, No. 14 Civ. 777, 2016 WL 309540, at *7 (W.D.N.Y. Jan. 26, 2016), the Decision in this case cannot be fairly construed to rest on the grounds the Commissioner now offers in its memorandum of law. The relevant section of the Decision expressly states the ALJ's reasons for rejecting Plaintiff's pain statements and does not mention the grounds the Commissioner now asserts. (Tr. 23-24.) The Court cannot affirm the ALJ's credibility determination based on these new arguments made for the first time in the district court, which explicitly were not part of the ALJ's determination. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) ("We may not properly 'affirm an administrative action on grounds different from those considered by the agency.'" (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999))).

Second, the Commissioner's argument that Plaintiff's work history—specifically, her supposed engagement in substantial gainful activity during the period of alleged disability—was rejected as a factual matter. (Tr. 33 (finding that Plaintiff did not engage in substantial gainful activity during the relevant period).)

Third, even if the Court imputed the Commissioner's new arguments to the ALJ, those arguments would only support a finding of non-disability for *part* of the relevant time period. The Commissioner does not offer any basis on which to discredit Plaintiff's pain statements for the period of roughly November 2013 through the date of the ALJ's decision. (Comm'r Br. 24-25.)

In short, the ALJ committed reversible error in his evaluation of the credibility of Plaintiff's statements of the debilitating effects of her pain. The Court therefore remands this case for further proceedings consistent with this Order.

## CONCLUSION

For the reasons set forth above, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded for further consideration consistent with this Order. The Clerk of Court is respectfully requested to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*

Pamela K. Chen
United States District Judge

Dated: Brooklyn, New York
       January 12, 2018